UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN K. TOSCANO,<br><br>        Plaintiff,<br><br>    vs.<br><br>SCOTT KERNAN,<br><br>        Defendant. | 1:16-cv-01554-EPG-PC<br><br>ORDER DISMISSING ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED<br><br>(ECF No. 32)<br><br>ORDER THAT DISMISSAL IS SUBJECT TO 28 U.S.C. § 1915(g)<br><br>ORDER FOR CLERK TO CLOSE CASE |

## I. BACKGROUND

On September 23, 2016, Benjamin K. Toscano ("Plaintiff") a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.)

On December 28, 2016, the Court issued a screening order, dismissing Plaintiff's complaint for failure to state a claim with leave to amend. (ECF No. 22.) The Court explained that Plaintiff failed to raise a valid constitutional challenge to a specific policy or regulation and did not attempt to explain why any such program or policy was unconstitutional. Plaintiff indicated in his original complaint that his current custody status is unsafe, but failed to name individuals or give specific details regarding deliberate indifference to Plaintiff's safety. The

Court noted that relevant legal analysis for an Eighth Amendment claim requires Plaintiff to name specific individuals and describe how they were deliberately indifferent to his safety.

Plaintiff filed his Second Amended Complaint ("SAC") on March 16, 2017 (ECF No. 32.). Plaintiff generally challenges regulations regarding security threat groups, implemented in 2012, which purports to "monitor affiliates and assist with transition for return to a general population setting." Plaintiff previously was confined to the Security Housing Unit ("SHU"), but since the passage of 15 U.S.C. § 3378.3, he has been transferred to a different housing unit. Plaintiff appears to wish to be in the SHU indefinitely.

The SAC (ECF No. 32) is now before the Court for screening pursuant to 28 U.S.C. § 1915A. For the following reasons, the Court dismisses the action with prejudice for failure to state a claim.[1]

## II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

---

[1] On November 4, 2016, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c) (ECF No. 10). Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678. The mere possibility of misconduct falls short of meeting this plausibility standard. Id. While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. PLAINTIFF'S SECOND AMENDED COMPLAINT

#### A. Plaintiff's General Allegations

In Plaintiff's second amended complaint, he names Scott Kernan, Director of CDC and M. Lujan, Correctional Lieutenant as defendants. Plaintiff requests relief in the form of a declaratory judgment finding that he is in imminent danger and injunctive relief directing the CDCR Director to abandon the STG/SDP programs and remove it from the Title 15, to be returned to non-disciplinary segregation (SHU), criminal and federal investigations, compensatory, punitive and nominal damages, a trial by jury, to be transferred to Corcoran State Prison or New Folsom State Prison SHU, and to have his request for out-of-state transfer to Las Vegas State Prison processed by Defendants. (ECF No. 32.)

Plaintiff states that his complaint challenges Title 15 § 3378.3, a California law regarding the Security Threat Group (STG)/Step Down Program (SDP), which California Department of Corrections (CDC) implemented on October 18, 2012. This regulation affords validated inmates housed in the SHU a way to transfer from SHU back to the General Population (GP).

Plaintiff alleges that on January 26, 2016, the United States Northern District Court approved the preliminary agreement in the Ashker v. Governor of the State of California case, in which inmates can no longer be validated (by which he presumably means validated as gang members subject to SHU). Because inmates can no longer be validated indefinitely, Plaintiff alleges that the SDP is obsolete and should be removed from the California regulations.

Plaintiff alleges that the Departmental Review Board (DRB) did not meet regarding Plaintiff until after the complaint was filed. After the complaint was filed, the DRB met and ultimately sent Plaintiff to the restricted custody general population (RCGP) modified step down program. Plaintiff claims that the Ashker case does not apply to him.

Plaintiff claims he is "simply challenging a law that is obsolete and having it removed from the Title 15 etc. . . . The CDCR Title 15 § 3378.3 is a law that is now obsolete and Scott Kernan was named to remove it from the Title 15, since he is the CDC director."

Plaintiff also alleges that the RCGP continues to put him in danger. The RCGP is designed to release inmates back to the GP. Plaintiff alleges "Officials here at Pelican Bay State Prison will continue to fabricate statements and documents in an attempt to set me up again for assault/murder." Plaintiff alleges he can never go to GP nor a sensitive needs yard.

Plaintiff attaches a declaration from himself as an exhibit. Plaintiff described how he has reported on the RCGP to the warden and institutional gang investor. He summarized such a report, including how various inmates made another inmate quit his porter/food service job because Plaintiff exposed him on a 602 appeal for copying Plaintiff's 602 appeals. He writes that other inmates claim to be special needs, but it's an act. Plaintiff believes most of these individuals may have been allowed to claim they have safety issues in an attempt to go to special needs yard to carry out sanctioned hits.

Plaintiff also includes a declaration of David Estrada, which was apparently submitted in connection with another issue. Plaintiff writes "I really don't have much need for the affidavit at this time but enclosed is a copy of you." The affidavit concerns claims of not receiving forms upon request.

**B. Allegations Against Magistrate Judge Erica P. Grosjean**

Plaintiff also includes allegations against the undersigned judge, alleging that an amended complaint was requested to avoid imposing sanctions upon Byron Miller, Scott Kernan, and Lieutenant Lujan for committing fraud upon the court and "to aid them in their attempt to commit assault/murder upon Plaintiff." (ECF No. 32, p. 5.) The Court notes that on March 2, 2017, Plaintiff filed another case, bearing case number 1:17-cv-00292, naming the

undersigned as a defendant. That case was originally assigned to Magistrate Judge Erica P. Grosjean. On March 6, 2017, the undersigned recused herself and the case was reassigned to Magistrate Judge Michael J. Seng. The Court does not address those allegations to the extent they are repeated in this case.

## IV. LEGAL STANDARD

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of

causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

To establish standing under Article III, a plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Kaahumanu v. Hawaii, 682 F.3d 789, 796 (9th Cir. 2012).

**A. Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this

"deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

**B. Supervisor Liability**

A Plaintiff asserting a claim pursuant to § 1983 must identify each defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009). In other words, there must be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).

Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013) ("A prison official in a supervisory position may be held liable under § 1983... 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting Lolli v. Cty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)). Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

### V. ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint fails to state a claim under these legal standards.

Regarding Plaintiff's challenge to 15 U.S.C.§ 3378.3, Plaintiff does not state a constitutional challenge to this law. Indeed, Plaintiff claims it should be struck because it is obsolete—not because it is unconstitutional. Plaintiff does not point to specific language of § 3378.30 that would indicate its lack of constitutionality. There is not a constitutional right to have obsolete laws stricken from the books. Plaintiff also does not explain his own standing to make such a challenge.

Plaintiff also does not allege facts indicating that any specific defendant was deliberately indifferent to his safety. In the initial screening order, the Court instructed Plaintiff file an amended complaint, naming each defendant that led to the deprivation of Plaintiff's constitutional or other federal rights. Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights, and he must, in his own words, describe what happened and how each defendant's actions violated the particular right described by Plaintiff. (ECF No. 22, p. 14.)

Although Plaintiff added M. Lujan as a defendant in the SAC, he has failed to indicate that either defendant Lujan or Kernan are the individuals responsible for making the decision to release him into his current housing. Plaintiff provides no facts describing why or how the individuals were deliberately indifferent to his safety. Plaintiff does not allege what these individuals knew that would have shown Plaintiff's safety was threatened, nor how they acted with deliberate indifference to his safety. Plaintiff's allegations that he should never be in the general population are insufficient to establish that any specific person acted with deliberate indifference. It is not this Court's role to independently review Plaintiff's classification or prison assignment. Instead, this Court looks to whether a specific individual violated Plaintiff's constitutional rights by acting with deliberate indifference to his safety as described above.

In short, Plaintiff's complaint fails to indicate that any statute is unconstitutional or that any person acted with deliberate indifference to Plaintiff's safety in a way that violated the Eighth Amendment's cruel and unusual punishment prohibition.

## VI. CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state cognizable claims against any Defendant. Plaintiff was previously notified of the deficiencies in his claims and granted leave to amend, but he was unable to cure the deficiencies. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Based on the record in this case, the Court finds that further leave to amend is not warranted.

Accordingly, pursuant to 28 U.S.C. §§ 1915A and 1915(e), the Court HEREBY ORDERS that the action be DISMISSED, with prejudice, based on Plaintiff's failure to state any claims upon which relief may be granted under § 1983. This dismissal is subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g). Coleman v. Tollefson, 135 S. Ct. 1759, 1763 (2015). The Clerk of the Court is directed to CLOSE this case.
IT IS SO ORDERED.

Dated: **April 17, 2017**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE